Kathleen A. Jorrie (SBN 121578)
Jeffrey D. Wexler (SBN 132256)
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 3600
Los Angeles, CA  90017-5524
Telephone:  213.488.7100
Facsimile:  213.629.1033
kathy.jorrie@pillsburylaw.com
jeffrey.wexler@pillsburylaw.com

Attorneys for Plaintiff StudioCanal SAS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| STUDIOCANAL SAS, a French société par actions simplifiée,<br><br>        Plaintiff,<br><br>  vs.<br><br>HOLLYWOOD COLLECTIBLES GROUP, LLC, a Florida limited liability company,<br><br>        Defendant. | Case No. 2:24-cv-11002<br><br>**COMPLAINT FOR:  (1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]; (2) FEDERAL UNFAIR COMPETITION [15 U.S.C. § 1125(a)]; (3) CALIFORNIA STATUTORY UNFAIR COMPETITION [Cal. Bus. & Prof. Code §§ 17200 *et seq.*]; (4) BREACH OF CONTRACT; (5) ACCOUNT STATED; (6) ACCOUNTING; AND (7) DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

4936-2916-4803.v4

Plaintiff StudioCanal SAS ("StudioCanal") brings this Complaint against Defendant Hollywood Collectibles Group, LLC ("HCG") and alleges as follows:

## JURISDICTION AND VENUE

1.      This is a civil action seeking monetary damages and injunctive and declaratory relief in connection with a now-terminated agreement under which StudioCanal licensed HCG to sell knives using StudioCanal's RAMBO and FIRST BLOOD marks. The Court has federal question jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) over StudioCanal's First and Second Claims for Relief for infringement of a federally registered trademark and unfair competition actionable under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, because the claims arise under an act of Congress relating to trademarks. The Court has jurisdiction pursuant to 28 U.S.C. § 1338(b) over StudioCanal's Third Claim for Relief for statutory unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.* because that claim is joined with substantial and related claims under the trademark laws. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over StudioCanal's Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief under California law statutory unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.*, breach of contract, account stated, accounting, and declaratory relief because those claims are so related to StudioCanal's claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. The Court also has jurisdiction over all claims for relief asserted herein pursuant to 28 U.S.C. § 1332(a) because: (a) complete diversity of citizenship exists between StudioCanal, on the one hand, and HCG, on the other hand; and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.      The Court has personal jurisdiction over HCG because: (a) HCG entered into an agreement with StudioCanal consenting to the jurisdiction of the courts of the State of California, including federal courts located therein; and (b) HCG entered into that agreement with StudioCanal's agent located in Los Angeles, California.

4936-2916-4803.v4

3.     Venue is proper in this judicial district because HCG entered into an agreement with StudioCanal consenting to venue in this judicial district.

## THE PARTIES

4.     StudioCanal is a French société par actions simplifiée having its principal place of business in Issy-les-Moulineaux, France.

5.     StudioCanal is informed and believes, and based thereupon alleges, that HCG is a Florida limited liability company having its principal place of business in De Leon Springs, Florida. StudioCanal is further informed and believes, and based thereon alleges that Mark Hilliard, a resident of Florida, is the sole member of HCG.

## FACTUAL ALLEGATIONS

**A.     StudioCanal's Marks.**

6.     StudioCanal is the owner of certain intellectual property related to the first three Rambo movies – *First Blood, Rambo: First Blood Part II*, and *Rambo III*, which were released in 1982, 1985, and 1988, respectively.

7.     StudioCanal owns U.S. Trademark Reg. No. 1,400,935, registered on July 15, 1986 for the mark RAMBO in International Class 8 for "knives, namely hunting knives, fishing knives, pocket knives, penknives."

8.     StudioCanal owns common law rights in the mark FIRST BLOOD, as used on knives in International Class 8.

**B.     The Merchandising License Agreement.**

9.     StudioCanal's predecessor StudioCanal Image S.A. entered a Merchandising License Agreement (the "License Agreement") with HCG dated as of December 18, 2006, Section II of which was titled "Schedule 'A' Additional Terms & Conditions" (the "Terms & Conditions").

10.     StudioCanal has assumed the rights once held by StudioCanal Image S.A. in the License Agreement. For purposes of this Complaint, the term StudioCanal will be used to refer to both StudioCanal entities.

3

11.    In the License Agreement, StudioCanal licensed HCG to use certain intellectual property from the Rambo movies – in particular the RAMBO and FIRST BLOOD marks – in connection with certain fixed blade knife products.

12.    The License Agreement had an initial four-year term, starting on January 1, 2007 and ending on December 31, 2010. The License Agreement provided for an "EXTENSION TERM" which provided that "[HCG] has the automatic right to renew this agreement for the same terms and conditions if [HCG] has paid not less than Fifty Thousand Dollars ($50,000) in Royalties to [StudioCanal]" and was "not in breach of any terms of the . . . License Agreement."

13.    The License Agreement granted HCG an exclusive license to use the marks in connection with certain specifically described fixed bladed knife products ("Licensed Articles") worldwide (the "Territory"). It required payment of royalties of 8 percent for certain types of knives and 10 percent for certain other types of knives.

14.    Paragraph 4(a) of the Terms & Conditions provided that "[i]f . . . [HCG] fails to actively continue marketing and distributing any units of said Licensed Article in any country of or substantial portion of the Territory, [StudioCanal] may terminate this Agreement or the license with respect to the particular portion of the Territory on thirty (30) days written notice, unless [HCG] shall, within such period, have recommenced distribution of Licensed Articles within such portion of the Territory."

15.    Paragraph 4(b) of the Terms & Conditions provided that HCG "shall use its best efforts to procure the greatest volume of sales of the Licensed Articles consistent with high quality and shall make and maintain timely and adequate arrangements for their manufacture, distribution, advertising and promotion."

16.    Paragraph 4(c) of the Terms & Conditions provided that HCG "shall sell and distribute the Licensed Articles only to jobbers, wholesalers, and retailers for distribution and sale to retail stores and merchants, but not for publicity or promotional tie-in purposes, or any other means of distributing, marketing or merchandising reserved to Licensor under Paragraph 3 above." In turn, paragraph 3 of

4

the Terms & Conditions specifically reserved to StudioCanal "the right to manufacture, distribute, offer for sale, sell, advertise, promote, display and otherwise exploit articles similar and/or identical to the Licensed Articles . . . via premium sales . . .mail/telephone order sales, . . . computer shopping services. . . ."

17.    Paragraph 6(a) of the Terms & Conditions provided that "[a]ll accounting statements shall be complete and accurate, certified to be accurate by Licensee and specifying the quantity of each item sold, the sales prices of the Licensed Articles, the royalty rate and the amount due Licensor. If the Territory covers more than one country, accounting statements shall be separated on a country-by-country basis."

18.    Paragraph 8(a) of the Terms & Conditions provided that StudioCanal "hereby grants to Licensee the right to use the Trademarks . . . only on and in connection with the Licensed Articles and for this purpose to affix the Trademarks to or on packaging, advertising and promotional materials sold, used or distributed in connection with the Licensed Articles. Licensee hereby agrees to limit its use of the Trademarks to the Territory and to the Licensed Articles, all in accordance with the foregoing. . . ."

19.    Paragraph 8(g) of the Terms & Conditions provided that "All rights in the Property other than those specifically granted herein are reserved to [StudioCanal] for its own use and benefit. [HCG] acknowledges that it shall not acquire any rights of whatsoever nature in the Trademarks as a result of [HCG's] use thereof, and that all use of the Trademarks by [HCG] shall inure to the benefit of [StudioCanal]."

20.    Paragraph 11.a of the Terms & Conditions allowed StudioCanal to terminate the License Agreement upon 30 business days' notice if HCG were in material breach thereof, provided that HCG had not remedied the breach to StudioCanal's satisfaction during that 30-business-day period. Upon termination for material breach, HCG had no right to sell, distribute, or otherwise dispose of any Licensed Articles without StudioCanal's prior written consent.

4936-2916-4803.v4

21.     Paragraph 11.b of the Terms & Conditions provided that upon expiration of the term of the License Agreement or earlier termination: (a) HCG's license to use the RAMBO and FIRST BLOOD marks would terminate; (b) HCG, in StudioCanal's discretion, would be required either to deliver to StudioCanal the Licensed Articles or give to StudioCanal satisfactory proof of destruction thereof; (c) all sums due to StudioCanal would become immediately due; and (d) HCG would have one month to deliver to StudioCanal an inventory of all units of the Licensed Articles on hand and/or in the process of manufacture.

22.     Paragraph 12.d of the Terms & Conditions (the "Force Majeure Clause") provided that "[t]he parties shall be released from their respective obligations hereunder if government regulations or other causes arising out of a state of war or other national emergency, or other causes beyond the reasonable control of the parties, render performance of such obligations reasonably impracticable," and that "[i]f such event continues for a period of sixty (60) days, either party may terminate this Agreement by giving written notice."

## C.     HCG's Extensions and Attempted Extension of the License Agreement.

23.     On or about August 31, 2010, November 6, 2014, and November 5, 2018, HCG issued amendments to extend the term of the License Agreement by four years, with the last extension expiring on December 31, 2022.

24.     On or about October 18, 2022, HCG issued an amendment that purported to give notice that it was extending the term of the License Agreement until December 31, 2026.

## C.     HCG's Breach of the License Agreement.

25.     While HCG sent checks to StudioCanal for royalties or advances, StudioCanal did not deposit any checks sent after October 2015 and before April 27, 2023; those checks are currently invalid due to the passage of time. HCG owes StudioCanal $142,725.34 as payment of the unpaid advances and royalties reflected

4936-2916-4803.v4

on the royalty accounting statements from October 2015 through early 2023. (Such amounts are comprised of: (a) $53,894.59 in total royalties accounted to StudioCanal for the period 2015 through 2018, less the $8,702.94 in cumulative royalties reflected on the 2015 Q3 accounting statement; (b) $92,533.69 in total royalties accounted to StudioCanal for the period 2019 through 2022; and (c) $33,255.67 in total royalties accounted to StudioCanal for the year 2023, less a $28,255.67 check delivered to StudioCanal in April 2023.)

26.    StudioCanal is informed and believes, and based thereon alleges, that HCG may owe additional royalties to StudioCanal that are not identified on the royalty accounting statements that HCG provided to StudioCanal.

27.    On June 16, 2023, Kathy A. Jorrie of the law firm Pillsbury Winthrop Shaw Pittman LLP, counsel for StudioCanal, sent a letter to HCG notifying it that its attempted renewal of the License Agreement was ineffective because, among other reasons, HCG was in material breach of the License Agreement at the time that it gave notice of renewal.

28.    In her letter of June 16, 2023, Ms. Jorrie also: (a) gave HCG notice that StudioCanal was terminating the License Agreement (to the extent that it continued to be effective) because of HCG's material breach of several of the terms of the License Agreement; (b) requested that HCG pay StudioCanal $142,725.34, the amount of unpaid advances and royalties owing based on the accounting statements delivered by HCG to StudioCanal under the License Agreement; and (c) requested certain information and documentation.

29.    As set forth in Ms. Jorrie's letter of June 16, 2023, as of the time when HCG purported to exercise its right to renew the License Agreement, HCG was in breach of the License Agreement as follows:

a.    HCG was in breach of Paragraph 6(a) of the Terms & Conditions because the Royalty Reports delivered by HCG to

4936-2916-4803.v4

StudioCanal failed to identify the sales price of the items sold or to include a separate accounting statement for each country in the Territory.

b.     HCG was in breach of Paragraph 4(c) of Terms & Conditions incorporating Paragraph 3 of the Terms & Conditions because it was (i) offering to sell, selling, and advertising Licensed Articles via online stores and other e-commerce platforms including, without limitation, Amazon, third party e-commerce stores and its own website, and (ii) authorizing others to engage in similar sales activities.

c.     HCG was in breach of Paragraph 4(a) of the Terms & Conditions because, as was clear from the royalty accounting statements, HCG had not actively marketed and distributed the Licensed Articles in a substantial portion of the Territory or in many countries in the Territory. (HCG's royalty reports showed that its worldwide sales of Licensed Articles consisted of the sale of 12, 4 and 2 Licensed Articles in the second, third and fourth quarters of 2022 – a total of 18 knives sold over 9 months throughout the entire world.)

d.     HCG was in breach of Paragraph 4(b) of the Terms & Conditions because it was clear, based on the accounting statements alone, that HCG was not using its best efforts to procure the greatest volume of sales of the Licensed Articles.

e.     HCG was in breach of Paragraph 8(a) of the Terms & Conditions because HCG had used the RAMBO mark on products other than the Licensed Articles.

f.     HCG was in breach of Paragraph 8(g) of the Terms & Conditions because HCG's principal, Mr. Hilliard, had applied for and registered the mark FIRST BLOOD.[1]

---

[1] Concurrently herewith, StudioCanal is filing a cancellation proceeding with the Trademark Trial & Appeal Board to cancel Mr. Hilliard's registration for the FIRST BLOOD mark.

4936-2916-4803.v4

30.    On July 19, 2023, Christopher M. Hamilton of the law firm Mestdagh, Wall & Hamilton, counsel for HCG, sent a letter to Ms. Jorrie in response to her letter of June 16, 2023. In response to Ms. Jorrie's statement in her letter that the amount of $142,725.34 represented all unpaid advances and royalties owing based on the accounting statements delivered by HCG to StudioCanal under the License Agreement, Mr. Hamilton's letter stated that HCG would reissue any undeposited checks, but requested an explanation as to why StudioCanal did not cash the checks.

31.    In response to the assertion that HCG had failed to actively market and distribute the Licensed Articles as required under the License Agreement, Mr. Hamilton argued that HCG's poor sales during the second, third and fourth quarters of 2022 were excused due to the "unprecedented global supply chain disruptions that occurred during and after the COVID-19 pandemic."

32.    Mr. Hamilton's July 19, 2023 letter also asserted that HCG's right to renew the License Agreement was perpetual.

33.    On August 25, 2023, Ms. Jorrie sent a letter to Mr. Hamilton in response to his letter of July 19, 2023.  In her letter of August 25, 2023, Ms. Jorrie stated her understanding that StudioCanal's reason for not cashing checks received from HCG after October 2015 was a concern that HCG would contend that StudioCanal's deposit of such checks waived its rights to enforce the License Agreement as written.

34.    In response to Mr. Hamilton's claim that HCG was somehow excused from engaging in sales activities during the second, third and fourth quarters of 2022 due to supply chain disruptions caused by the COVID-19 pandemic, Ms. Jorrie's August 25, 2023 letter gave notice that StudioCanal was terminating the License Agreement for the independent reason that the Force Majeure Clause authorized StudioCanal to terminate the License Agreement when a force majeure event lasted for more than 60 days.

35.    Ms. Jorrie's August 25, 2023 letter also explained that contrary to HCG's assertion, HCG did not have a perpetual right to renew the License Agreement and

4936-2916-4803.v4

therefore its attempt to renew the License Agreement in 2022 was ineffective for this reason alone.

36.   On September 27, 2023, Mr. Hamilton sent a letter to Ms. Jorrie in response to her letter of August 25, 2023.

37.   HCG has not written new checks to StudioCanal for the $142,725.34 reflected on accounting statements for October 2015 through early 2023.

38.   HCG did not remedy one or more of the material breaches identified in Ms. Jorrie's June 16, 2023 letter within thirty (30) business days of receipt of such letter or at any time thereafter.

39.   StudioCanal is informed and believes, and based thereon alleges, that the amount of royalties owed by HCG to StudioCanal on sales of its products may exceed the amounts shown on the accounting statements provided by HCG to StudioCanal.

40.   As required under the terms of the License Agreement, StudioCanal and HCG participated in a number of mediation sessions under the Commercial Mediation Rules of the American Arbitration Association commencing on November 10, 2023. The American Arbitration Association stated that it would proceed to close the mediation file on December 20, 2024.

**E.   HCG's Continued Unauthorized Use of the Marks.**

41.   HCG is continuing to sell knives using the RAMBO and FIRST BLOOD marks notwithstanding Ms. Jorrie's letters of June 16, 2023 and August 23, 2023 stating that renewal of the License Agreement was ineffective and giving notice of termination of the License Agreement.

## FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement (15 U.S.C. § 1114))

42.   StudioCanal refers to the allegations contained in the above paragraphs 1 through 41, inclusive, and incorporates them by reference as though fully set forth herein.

4936-2916-4803.v4

43.    StudioCanal holds a federal trademark registration for the RAMBO mark in International Class 8 for "knives, namely hunting knives, fishing knives, pocket knives, penknives."

44.    HCG is selling knives under the RAMBO mark notwithstanding termination of its license to use that mark.

45.    The aforesaid acts constitute trademark infringement in violation of 15 U.S.C. § 1114.

46.    HCG's trademark infringement in violation of 15 U.S.C. § 1114 is likely to cause confusion, mistake, or deception among the consuming public.

47.    StudioCanal will suffer damages as a result of HCG's trademark infringement in violation of 15 U.S.C. § 1114(a), in an amount not yet ascertained but to be proven at trial.

48.    StudioCanal is informed and believes, and based thereon alleges, that HCG has acted in bad faith and/or willfully in using the RAMBO mark notwithstanding termination of its license to use that mark.

49.    HCG's trademark infringement in violation of 15 U.S.C. § 1114(a) will cause StudioCanal to suffer irreparable injuries to its goodwill. StudioCanal does not have an adequate remedy at law to recover for this harm, and is entitled to preliminary and permanent injunctive relief against HCG's acts constituting trademark infringement in violation of 15 U.S.C. § 1125(a).

50.    StudioCanal is also entitled to an Order requiring HCG to destroy any merchandise bearing the marks RAMBO mark or any mark that is confusingly similar thereto.

## SECOND CLAIM FOR RELIEF

### (Federal Unfair Competition (15 U.S.C. § 1125(a)))

51.    StudioCanal refers to the allegations contained in the above paragraphs 1 through 41, inclusive, and incorporates them by reference as though fully set forth herein.

4936-2916-4803.v4

52.    HCG is the owner of common law rights in the FIRST BLOOD mark for knives.

53.    HCG is selling knives under the FIRST BLOOD mark notwithstanding termination of its license to use that mark.

54.    HCG's unauthorized use of the FIRST BLOOD mark constitutes a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact, and is likely to cause confusion, mistake, and/or deception as to:

a.    the affiliation, connection or association of the mark FIRST BLOOD as solely with HCG; and

b.    the origin, sponsorship or approval of HCG's use of the mark FIRST BLOOD.

55.     The aforesaid acts constitute unfair competition in violation of 15 U.S.C. § 1125(a).

56.    HCG's unfair competition in violation of 15 U.S.C. § 1125(a) is likely to cause confusion, mistake, or deception among the consuming public.

57.    StudioCanal will suffer damages as a result of HCG's unfair competition in violation of 15 U.S.C. § 1125(a), in an amount not yet ascertained but to be proven at trial.

58.    StudioCanal is informed and believes, and based thereon alleges, that HCG has acted in bad faith and/or willfully in using the FIRST BLOOD mark notwithstanding termination of its license to use that mark.

59.    HCG's unfair competition in violation of 15 U.S.C. § 1125(a) will cause StudioCanal to suffer irreparable injuries to its goodwill. StudioCanal does not have an adequate remedy at law to recover for this harm, and is entitled to preliminary and permanent injunctive relief against HCG's acts constituting unfair competition in violation of 15 U.S.C. § 1125(a).

4936-2916-4803.v4

60.     StudioCanal is also entitled to an Order requiring HCG to destroy any merchandise bearing the FIRST BLOOD mark or any mark that is confusingly similar thereto.

### THIRD CLAIM FOR RELIEF

**(Statutory Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 *et seq.*))**

61.     StudioCanal refers to the allegations contained in the above paragraphs 1 through 41, inclusive, 43-44, inclusive and 52-55, inclusive and incorporates them by reference as though fully set forth herein.

62.     HCG, by doing the acts alleged herein, has engaged in unfair and unlawful business practices constituting statutory unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

63.     HCG's unfair and unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* will cause substantial injury to StudioCanal. StudioCanal has no adequate remedy at law for these injuries. Pursuant to Cal. Bus. & Prof. Code § 17204, StudioCanal is entitled to preliminary and permanent injunctive relief against HCG's unfair and unlawful business practices constituting statutory unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### FOURTH CLAIM FOR RELIEF

**(Breach of Contract)**

64.     StudioCanal refers to the allegations contained in the above paragraphs 1 through 41, inclusive, and incorporates them by reference as though fully set forth herein.

65.     The License Agreement is a valid and binding contract.

66.     StudioCanal has performed all of its obligations under the License Agreement, unless excused.

67.     HCG has breached the License Agreement by:

4936-2916-4803.v4

a.      Delivering Royalty Reports that failed to identify the sales price of the items sold or to include a separate accounting statement for each country in the Territory;

b.      offering to sell, selling, and advertising Licensed Articles via online stores and other e-commerce platforms including, without limitation, Amazon, third party e-commerce stores and its own website, and authorizing others to engage in similar sales activities;

c.      failing to actively market and distribute the Licensed Articles in a substantial portion of the Territory or in many countries in the Territory;

d.      not using its best efforts to procure the greatest volume of sales of the Licensed Articles;

e.      using the RAMBO mark on products other than the Licensed Articles;

f.      through its principal, Mr. Hilliard, applying for and registering the mark FIRST BLOOD;

g.      failing to pay the $142,725.34 due and owing on accounting statements provided by HCG showing royalties owed during the period from October 2015 through early 2023;

h.      on information and belief, failing to pay royalties that were owed for Licensed Articles sold by HCG but not reflected on the accounting statements provided by HCG;

i.      continuing to sell products using the RAMBO and FIRST BLOOD marks notwithstanding termination of its license to use those marks, in violation of the License Agreement's prohibition on such use; and

j.      failing to recognize that the License Agreement was terminated under the terms of the License Agreement.

14

4936-2916-4803.v4

68.   As a direct and proximate result of HCG's breach of its obligations under the License Agreement, StudioCanal has suffered injury in the amount of at least $142,725.34.

69.   StudioCanal is entitled to recover from HCG its damages in an amount according to proof, plus prejudgment interest.

70.   Because the License Agreement has been terminated, HCG must, in StudioCanal's discretion, either deliver to StudioCanal all units of the Licensed Articles in HCG's possession or give StudioCanal satisfactory proof of the destruction thereof.

## FIFTH CLAIM FOR RELIEF

### (Account Stated)

71.   StudioCanal refers to the allegations contained in the above paragraphs 1 through 41, inclusive, and incorporates them by reference as though fully set forth herein.

72.   As stated in StudioCanal's counsel's June 16, 2023 letter, HCG owed StudioCanal $142,725.34 as payment of the unpaid advances and royalties reflected on the royalty accounting statements for the period from October 2015 through early 2023.

73.   In his letter of July 19, 2023, HCG's counsel acknowledged, on behalf of HCG, that $142,725.34 was owed by HCG as payment of the unpaid advances and royalties reflected on the royalty accounting statements for the period from October 2015 through early 2023, less any amounts for checks that had been cashed.

74.   HCG has since failed to pay the agreed-upon amount, and StudioCanal is entitled to recover such amount.

4936-2916-4803.v4

## SIXTH CLAIM FOR RELIEF

### (Accounting)

75.    StudioCanal refers to the allegations contained in the above paragraphs 1 through 41, inclusive, and incorporates them by reference as though fully set forth herein.

76.    An accounting is appropriate to determine the amounts owed by HCG to StudioCanal pursuant to the License Agreement and, in particular, whether HCG owes any royalties to StudioCanal for Licensed Articles not identified on the accounting statements provided by HCG to StudioCanal.

77.    Accordingly, StudioCanal is entitled to, and hereby demands, the equitable remedy of accounting with regard to the amounts owed by HCG to StudioCanal pursuant to the License Agreement.

## SEVENTH CLAIM FOR RELIEF

### (Declaratory Relief)

78.    StudioCanal refers to the allegations contained in the above paragraphs 1 through 41, inclusive, and incorporates them by reference as though fully set forth herein.

79.    An actual controversy has arisen and now exists relating to the rights and duties of StudioCanal, on the one hand, and HCG, on the other hand, in that StudioCanal contends that:

a.    HCG's attempt to renew the License Agreement on or about October 18, 2022 was not effective because HCG was in material breach of the License Agreement as of that date, and the term of the License Agreement ended on December 31, 2022;

b.    in the alternative, StudioCanal's notice of termination of the License Agreement given on June 16, 2023 was effective as of August 1, 2023 or such other date as may be determined by the Court;

16

c.    in the alternative, StudioCanal's notice of termination of the License Agreement under the Force Majeure Clause given on August 25, 2023 was effective as of December 31, 2022 or such other date as may be determined by the Court;

d.    in the alternative, HCG's attempt to renew the License Agreement on October 18, 2022 was not effective because HCG did not have a perpetual right to renew the License Agreement; and

e.    by reason of termination of the License Agreement, HCG no longer has the right to sell products using the RAMBO and FIRST BLOOD marks.

80.    StudioCanal is informed and believes, and based thereon alleges, that HCG disputes StudioCanal's contentions.

81.    StudioCanal desires a judicial determination of its rights and duties, and a declaration that:

a.    HCG's attempt to renew the License Agreement on or about October 18, 2022 was not effective because HCG was in material breach of the License Agreement as of that date, and the term of the License Agreement ended on December 31, 2022;

b.    in the alternative, StudioCanal's notice of termination of the License Agreement given on June 16, 2023 was effective as of August 1, 2023 or such other date as may be determined by the Court;

c.    in the alternative, StudioCanal's notice of termination of the License Agreement under the Force Majeure Clause given on August 25, 2023 was effective as of December 31, 2022 or such other date as may be determined by the Court;

d.    in the alternative, HCG's attempt to renew the License Agreement on October 18, 2022 was not effective because HCG did not have a perpetual right to renew the License Agreement; and

4936-2916-4803.v4

e.     by reason of termination of the License Agreement, HCG no longer has the right to sell products using the RAMBO and FIRST BLOOD marks.

82.    A judicial declaration is necessary and appropriate at this time under the circumstances so that StudioCanal, on the one hand, and HCG, on the other hand, may ascertain their respective rights and duties in connection with the License Agreement, including whether HCG has the right to continue to sell knives using the RAMBO and FIRST BLOOD marks.

## PRAYER FOR RELIEF

WHEREFORE, StudioCanal requests judgment in its favor, and against HCG, as follows:

(1)    For an award of compensatory damages in an amount to be determined at trial;

(2)    For an award in the amount of $142,725.34 by reason of an account stated;

(3)    For prejudgment interest;

(4)    For a preliminary injunction and permanent injunction enjoining and restraining HCG, and its directors, officers, agents, servants, employees, representatives, successors, and assigns, and any person acting at their request or direction or in active concert or participation with them, from using the marks RAMBO or FIRST BLOOD or any marks that are confusingly similar thereto;

(5)    For an Order requiring HCG to either return to StudioCanal or to destroy any merchandise bearing the marks RAMBO or FIRST BLOOD or any mark that is confusingly similar thereto;

(6)    For an accounting;

(7)    For a declaration that:

4936-2916-4803.v4

(a)     HCG's attempt to renew the License Agreement on or about October 18, 2022 was not effective because HCG was in material breach of the License Agreement as of that date, and the term of the License Agreement ended on December 31, 2022;

(b)     in the alternative, StudioCanal's notice of termination of the License Agreement given on June 16, 2023 was effective as of August 1, 2023 or such other date as may be determined by the Court;

(c)     in the alternative, StudioCanal's notice of termination of the License Agreement under the Force Majeure Clause given on August 25, 2023 was effective as of December 31, 2022 or such other date as may be determined by the Court;

(d)     in the alternative, HCG's attempt to renew the License Agreement on October 18, 2022 was not effective because HCG did not have a perpetual right to renew the License Agreement; and

(e)     by reason of termination of the License Agreement, HCG no longer has the right to sell products using the RAMBO and FIRST BLOOD marks.

(8)     For a finding that this is an exceptional case under the Lanham Act;

(9)     For attorneys' fees as authorized by law;

(10)    For costs and expenses of suit; and

19

4936-2916-4803.v4

(11)    For such other and further relief as the Court deems just and proper.

Dated:  December 20, 2024          KATHLEEN A. JORRIE
                                   JEFFREY D. WEXLER
                                   PILLSBURY WINTHROP SHAW PITTMAN LLP


                                    /s/ *Kathleen A. Jorrie*
                                   Kathleen A. Jorrie
                                   Attorneys for Plaintiff StudioCanal SAS

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiff StudioCanal SAS hereby demands a trial by jury.


Dated:   December 20, 2024          KATHLEEN A. JORRIE
                                    JEFFREY D. WEXLER
                                    PILLSBURY WINTHROP SHAW PITTMAN LLP



                                    _/s/ *Kathleen A. Jorri*e_____
                                    Kathleen A. Jorrie
                                    Attorneys for Plaintiff StudioCanal SAS

4936-2916-4803.v4